Good morning, your honors. Good morning, counsel. My name is Chris Bennett from the Office of the State Appellate Defender, and I represent Mr. Gonzales before you today. I intend to speak to trial issue first, second, P431B, jury instructional error second, and third, if there is time for prosecutorial misstatement of evidence. I'll answer any questions your honors have on any of the other issues. On October 25th, 2006, the state charged Mr. Gonzales of aggravated criminal sexual abuse for an incident that allegedly occurred between him and his daughter four days earlier. The state then waited 1,182 days to charge Mr. Gonzales of predatory criminal sexual assault based on the same incident with his daughter, but not based on any new evidence. These charges were subject to compulsory joinder, and because of that, the speedy trial term ran on the predatory criminal sexual assault charges from the date of Mr. Gonzales' arrest on October 25th, 2006. The Peoria County State's attorneys office sat on its hands for almost three years prior to adding these additional and new charges. It violated Mr. Gonzales' speedy trial rights on those charges. Now under plain error or ineffective assistance of counsel, we are asking for the limited relief of vacating his predatory criminal sexual assault conviction and remanding for resentencing on the aggravated criminal sexual abuse charges. Now in regards to compulsory joinder, there's three elements that need to be satisfied. One is that the multiple charges are known to the prosecutor when the prosecution begins. Two, the charges are within the same jurisdiction with a single court. And three, the charges are based on the same act. All three of them are satisfied here. This is all based on the same incident that occurred between Mr. Gonzales and his daughter on October 21st, 2006. They all occurred in Peoria County. And finally, the multiple charges were known to the prosecutor when they began the prosecution on October 25th, 2006. The state has essentially conceded in its brief that they were required to be tried together. The state has provided no explanation other than this. People were clear that they initiated additional charges, quote, solely because the defendant chose not to plead guilty on the original charges that offered. Now when charges are subject to compulsory joinder, the new and additional charges are subject to the original statutory time limitation as the original charges. Is your argument that had they been joined, defense counsel would have made a speedy trial demand? Well, the argument is trial counsel is ineffective for not making a motion to dismiss based on speed trial violation. Was there a speedy trial demand? On the original charges, no. But according to the Williams rule, that is not necessary on the new and additional charges. It states that from the date of arrest, basically the speedy trial clock runs at that point. The defendant remains in custody 120 days for the state to add the new and additional charges. Out of custody, 160 days. People be a hunter out of the first district. Explains the natural consequences of the Williams rule. Quote, the tolling the speedy trial term on the new and additional charges can only occur when and if subsequent charges are filed within the speedy trial term. That clearly did not happen here. The defendant was in custody almost 1,200 days before filing the new and additional charges. The new and additional charges weren't based on any new evidence. They had this evidence. The fact that defense counsel didn't make a speedy trial demand at all doesn't affect the Williams rule? It does not. That is our argument, Your Honor. I think Hunter says that as well. It says the speedy trial term runs on the not yet charged offense from the date the defendant is arrested on the original charge, not based on any demand. And the basis of the Williams rule is basically the only way to make the state comply with compulsory charter is to attribute that period to the state. Without it, the state would allow the state to ambush the defendant just before trial, which is exactly right. As a follow-up to her question, isn't it true in Williams and Hunter there was a speedy trial filed? Correct. However, in Hunter, that was not a basis of its rationale in citing to Williams. In both those cases, a speedy trial demand was made. I believe in Williams, actually, he was in custody, so he didn't actually need to make a speedy trial demand. But in Hunter, the speedy trial demand was made, I believe, on the day after he was released. However, that was not the basis for the rationale in Hunter. It said the defendant remains in custody. The state has 120 days from the defendant's arrest to file new additional charges. The defendant has been released on bail. The state has 160 days. It cites to Williams at that point. And that is our contention, that the Williams rule is not dependent on a demand for out-of-custody, dependent on the original charge. This is a rare situation. It will only occur where the state has the evidence in its hands and can charge a defendant and chooses not to. It's a simple rule of follow-up. 120 days after the defendant has been arrested and remains in custody, the state has, to add the new and additional charges, 160 days for the defendant who is out on bail. That's a bright line rule. This is easy to follow. Because of the state's decision in this case to delay charging, it violated Mr. Gonzalez's right to a speedy trial. We are asking for the limited relief of vacating his predatory criminal sexual assault conviction and for remanding for resentencing of the aggravated criminal sexual abuse charges. If Your Honors have no further questions on the speedy trial issue, I'd like to turn to the 431B jury instructional issues. The state has conceded that 431B error and a jury instructional error occurred in this case. The only question remaining is whether this was a plain error. It's our contention that this was a closely balanced case, Your Honors. It essentially came down to a credibility contest between C.G. and Mr. Gonzalez. Both testified similarly as if some sort of incident, but differed as to whether there was contact between Mr. Gonzalez's penis and C.G.'s vagina. And physical evidence in this case doesn't lean one way or the other. There's an expert on both sides. The state's expert said that there was legal penetration, and the defense expert said that there was an innocent explanation for the physical evidence. Further, the state has not contradicted Mr. Gonzalez's cited authority in People v. Maldonado where a defendant's first jury trial results in a hung jury. The evidence is necessarily closely balanced. The state has stated no authority against that. We ask that, regarding this issue, that the defendant be given a new trial, assuming that you give relief on the first issue only on the aggravated criminal sexual abuse charges. If you do not provide relief on the speedy trial, it will be on both charges. If Your Honors have no further questions on the 431B or jury instructional error issue, I'd like to turn to the prosecutor in the statement of evidence. The prosecutor himself recognized the closely balanced nature of the evidence here. At his second jury trial, the prosecutor misstated the evidence as to the crucial element of legal penetration. The prosecutor twice said that Mr. Gonzalez confessed and said, quote, his penis was against his daughter's vagina. That never occurred. Mr. Gonzalez never made such a confession to legal penetration. And this is crucial here, because that is the crucial element of the crime. It is not reasonable inference from any of the statements Mr. Gonzalez gave to the cops. Second, the prosecutor said that the crime lab had confirmed penetration occurred. The crime lab made no such determination. In fact, the crime lab didn't even know whose blood was found on CJ. They didn't even analyze that. And we're claiming that there is both relief under both prongs of plain error and an effective assistance counsel for not objecting in this case. The crucial element here is that this was up for the jury to determine whether legal penetration occurred. When the prosecutor made its misstatements of evidence, it caused error to occur in reversible error. We're asking for reverse remand on that issue as well. Your Honors, I have no further questions. I reserve the remainder of my time for rebuttal. Thank you. Thank you, Your Honors. Mr. Nicolosi? Good morning, Your Honor. May it please the Court? May it please counsel? Your Honors, starting with the speedy trial issue, as counsel had already discussed, Your Honors were, I believe, entirely correct in pointing out the fact that there was never a written demand for a speedy trial in this case. And there needed to be, because he was brief. And Your Honor, Justice Carter, you were absolutely correct in pointing out that in Williams and Hunter, there was a demand. In one of them, there was a demand filed. In the other one, it ran automatically. But the fact is, the speedy trial clock started in those cases. And those cases do not hold that it doesn't matter whether or not the speedy trial clock started. Of course it matters. And the fact is, the defendant in this case did not do it. Therefore, there's no error on the speedy trial issue. And of course, counsel was not ineffective for not arguing a violation of a right that was never invoked. Regarding the 115-10 hearsay statements issue, I'm only going to touch on it briefly, basically only to note that this Court's decision in People v. Byron is, I think, a closely balanced issue that kind of leaks into several of the arguments here. In Byron, there's a 115-10 hearing, just like in this case. And in that case, four witnesses were allowed to testify to corroborate the young victim's story. This Court held that legislative intent of the statute, 115-10, was to specifically allow corroborative complaint testimony, and that witnesses should not be curtailed because of their numbers. And further, this Court found in Byron that it was also a plain error issue. In that case, this Court found that it was not closely balanced. And people would point out that there was no evidence aside from testimony whatsoever. And this Court still found that it wasn't closely balanced. They just had the corroborative testimony and the testimony of the victim. And in this case, not only did we have corroborative testimony from two witnesses and the victim, but we also had the evidence from the certified nurse that there was blood, that was testified by the crime lab technician. And Nancy Allward testified that the combination of that, the blood in the vaginal vault and the redness around the victim's hymen led her to conclude, to a reasonable degree of medical certainty, that this was a result of penetration because of a sexual assault. Moving on to the jury instruction issue, that people do concede that it was error not to give that particular instruction. But the people argue that this case, again, based on people versus Byron, that this case was not closely balanced. And in the jury instruction issue, we can consider the testimonies of the mother of the victim and Deputy DuBette, who both testified that the victim told them about very similar stories of something that happened with her father, the defendant. The mother testified that C.G., the victim, said that the defendant put his pee-pee, quote, on hers. And Deputy DuBette testified that the victim said that the defendant put his private part between her legs and went back and forth 10 minutes. And that corroborates the victim's story. They're obviously not identical, but the testimonies are rarely identical. What's important is that the victim testified that the defendant put her private part. That was corroborated by the other testimonies, just like in people versus Byron. And the fact is that corroborative, credible testimony is sufficient to conclude that this is not a closely balanced case. And, of course, also considering the testimony of the certified nurse who had testified regarding some physical evidence. People would also note that the fact that instruction IPI criminal 1.02 was given instead of 11.66, that also helped cure the error, as discussed by the Supreme Court in the people versus sergeant 2010 case. In that case, IPI 102 was given. And in sergeant, it included the age provision, where the jury is implored to consider the witness and the opportunity to observe his age. That was important. And that was given here, too. The same instruction here was given here as it was in sergeant. Court and sergeant found it wasn't plenary because it wasn't closely balanced. And the people would implore this court to consider that as well. Going to the closing arguments that counsel also discussed. The first comment was notably that the lab confirmed that there was penetration. That's what the prosecutor said. And the second comment was that the defendant told police that his penis was against his daughter's vagina. The people note, and we did extensively in our brief, that prosecutors and attorneys in general have wide latitude in closing arguments, and they can make reasonable inferences flowing from the evidence that was presented at trial. And the fact is that misstatements of facts or arguing facts that aren't in that evidence doesn't mandate reversal unless it's so, quote, so prejudicial as to constitute a material factor in the defendant's conviction. And the fact is that the people submit that these comments were reasonable inferences that flowed from the evidence. Regarding the first comment, regarding what the lab confirmed, the prosecutor said that the lab confirmed it, but that was in the context of a series of statements such as the victim was there and testified, and the science confirmed it, the lab confirmed it, and then the prosecutor said that Nancy Auer confirmed it. And the fact is that based on that whole list, people think it's clear that the prosecutor wasn't saying that each individual item, like the victim's testimony on its own, or the lab on its own, or Nancy Auer on her own, that was sufficient to prove the defendant guilty. That's not at all what the prosecutor was saying. It was taken in context. It's a reasonable inference. Regarding comment number two, whether the penis was against the vagina and whether or not the defendant said that specifically, the people would submit that the defendant did acknowledge that he told police that his penis was between the victim's legs and the people believe that saying that it was against was a reasonable inference there, too. And again, in the closing argument issue, the fact whether or not this case is closely balanced is important, as it is in several, and the people will rely on their previous argument with regard to whether or not this case is closely balanced. I believe that's all I have. If there are no questions. Thank you. Thank you very much. Just briefly in rebuttal, Your Honors. Regarding the misstatement of evidence, the key fact here was for the jury to determine whether there was legal penetration. It wasn't for the prosecutor to make up some statement by Mr. Gonzales that he had admitted to the police officer that his penis was against his daughter's vagina. That never occurred. And because of that misstatement, that misstatement alone could have tipped the balances against Mr. Gonzales in this case, especially where he had a hung jury in Mr. Gonzales' first trial. Speaking regarding the 115-10 issue, the key issue in Byron for this court determined that the key part of that was the evidence wasn't closely balanced in this case. Here the evidence was closely balanced. And so we believe that reversible error occurred on the 115-10 issue as well. Turning back to the speedy trial issue, Hunter does in fact apply the Williams rule and it does not require a demand on the original charge. It merely states the defendant remains in custody. The state has 120 days of defendant's arrest to file new and additional charges. The defendant has been released on bail. The state has 160 days. Further quoting, tolling the speedy trial term on the new and additional charges can only occur when and if the subsequent charges are filed within the speedy trial term. Hunter makes no such requirement of a demand. Your Honors, if you have no further questions, I will rest on the remainder of our arguments in our brief and ask for the required relief in those briefs as well. We thank you, Your Honor. Thank you. You've both done a very nice job of arguing your clients' positions. The matter will be taken under advisement and a decision rendered without undue delay. For now, we're going to have a somewhat lengthy recess for lunch and we'll resume at 1 o'clock.